Chief, Justice Robertson,
delivered the opinion of the court.
Gustaus A. Brown sued Given, Ferguson and Given, in case, for a “disturbance” by them of a ferry privilege, which Brown claimed across the Cumberland river, near its mouth. On the general issue, the jury found a verdict for the defendants, to reverse the judgment on which, Brown has appealed to this court.
Brown being the owner of one thousand two hundred acres of land on the Ohio and Cumberland rivers, and including the neck above their confluence, procured from the county court of Livingston, in July, 1811, an order, granting to him a ferry across tbe Cumberland, “from the point at the mouth of Cumberland to Smith-land,.”
In May, 1811, Brown had conveyed to John Daniel, a small piece of ground on the margin of the Cumberland, reserving to himself (Brown,) in the deed, all ferry privileges incident to the land so conveyed.
Immediately after the grant by the county court to Brown, he put his ferry into operation, from a landing within the boundary conveyed to Daniel, to the opposite shore, in Smithland, and employed Daniel to keep the ferry for him, for the profits which might accrue from it.
It is shown by proof in the case, that when the county court granted to Brown the ferry, all the land between the Ohio and Cumberland rivers, for five hundred yards or upwards, above their junction, was called and known as Hhe point at the mouth af Cumberland,” and that the landing designated and fixed by Brown, was about one hundred yards above the actual mouth of the Cumberland. It is also proved that Daniel kept Brown’s ferry well for him, and in his name, until about November, 1813, when he procured an order granting a ferry to himself, ‘from his lot at the mouth af Cumberland to the. opposite side at Smithlandand that after that time, he continued the ferry at the same *29 place, and in the same boat, but in his own name, under the ferry grant to himself.
If by non-user or other;yise, ferry subject that right to j^o^must be 8 ascertained by appropriate judicial trial, before owner, will be j”'e'fe0(i0ofH3 right of ferry,
Order of county court “dis-ferry "becaiuc owiier P a non-resident, and bis ferry is not kept agreeably to law,” is void, unloss owner had notice of the proceeding.
*29 In October, 1810, the county court granted to Giren, Ferguson and Given, lire privilege of keeping a ferry “across the Cumberland river at the. mo nth thereof.'’’
On the. 23’d of September, 1810, Daniel had given the following writing:
“It is hereby understood that Given, Ferguson and Given, is to have the same privileges that I have to the ferry, after I give them peaceable possession on the 1st of December next, for same, &c. that they are to establish themselves in the county court, by getting one established after I relinguish, which I will do, as soon as I can, after the 1st December next.”
In December, 1810, Daniel conveyed to Given, Ferguson and Given, all his right to the ground on the Cumberland, excepting the privilege of thereafter establishing a ferry, as Brown had reserved the ferry privilege to himself, in his deed to Daniel. About this rime, Given, Ferguson and Given, took possession of the fcrry boat, which had been used by Daniel, an I have, ever since, by themselves, or others holding under them, kept and enjoyed the exclusive emoluments of a ferry at the same place where Daniel had, for himself, and as the agent of Brown kept a ferry.
In the progress of the trial, instructions were given, and others withheld by the court. Without noticing in detail, these various propositions, we shall proceed in a brief and comprehensive manner, to state the principles, which, in our opinion, necessarily arise out of the record, and should govern the case, in doing so, we shall virtually dispose of all the questions embraced in the assignment of errors.
There is nothing in the record which shows that Brown has ever been legally divested of the right to the ferry granted to him in 1811. If, by non-user or otherwise, he had subjected that right to forfeiture, the fact should be ascertained by an appropriate judicial trial. In November, 1813, the county court of Livingston made an order, declaring that Brown’s ferry should be, and therefore was, “discontinued and set aside, because tha said. Brown is not a resident of thii state, and his ferry not being kept agreeable to lene.''1 But this order of the *30 county court was “exparle,” with out any notice to Brown, and is, therefore, as to him a nullity. It is a principle of the common law, founded on justice, and resulting from the objects of till judicial proceedings, that a judgment, or judicial order of a court, cannot affect any person who was neither party nor privy to it. And it is equally well settled, that no person can be considered a party to a judicial proceeding, unless he shall have notice of its pendency. In some cases constructive notice is made sufficient, sub modo, by statute. But in ibis case, Brown had no notice, actual or constructive, and was not present when the order for discontinuing his ferry, was made.
In towns on Ohio river, & on all rivers within this state, excepting the Ohio, county courts may establish as many ferries as they may deem conducive to public interest. County court may grant more than one ferry at same piase, if public convenience require it. Not necessary on any stream except the Ohio, that grantee of a ferry should pwn the land pnthe stream.
If the facts stated in the order, as the reason for making it, be sufficient, it was necessary, before the decision of the court upon them, could affect Brown, that he should have had an opportunity to contest them. That such an order, made under such circumstances, is utterly void as to Brown; might, if it were necessary, be shown by numerous decisions of this court, and other respectable courts. Butitisloo iirmly established by the authority of books, as well as of reason, to require-any support by citations.
The order granting a ferry to Daniel, at the same place at which Brown had fixed bis, does not appear to be illegal. In towns on the Ohio river, and on all rivers within the state, excepting the Ohio, the county courts may establish as many ferries as they may deem conducive to the public interest. A county court may grant more than one ferry at the same place, if public convenience require more than one. A ferry is a public highway, and is established more for the public good, than for the individual advantage of the grantee. The interest of “the ople,n must, therefore, control and predominate over that of an individual.
When a ferry is granted to one individual, the power is reserved, to grant the like franchise to another at the same place, 4:if the common welfare” shall require it. It is not necessary, on any stream, except the Ohio, that the grantee of a ferry, should own the land on the stream. All that is required, is that the owners shall be notified, before a ferry shall be granted to any other person. Another ferry cannot interfere with the landing of a pre-existing ferry.
Reservation of ferry privi-doc* not de-Prive county to* granta" ferry to ven-dee.
Order estab-li&hing ferry hundred yard* from landing of pre-existing n0t therewith.
A notice to Brown, of Daniel’s application for a ferry, was unnecessary, because Daniel owned the ground on the river, at the place where bis ferry was established
It is true, that the deed from Brown to Daniel, excepted the right to ferry privileges, and reserved them all to Brown. And it is equally true, thal after the conveyance to Daniel, Erowns ferry was established with the knowledge and assent of J teniel. But all this did not deprive the county court of the poner to grant to Daniel a ferry across the river from his land, if such grant were deemed advantageous to the public, if Daniel, by obtaining the grant, did injustice to Brown, or violated his contract with him, Brown might obtain reparation by an appropriate suit. But the reservation of die ferry privilege,by Brown's deed to Daniel, cannot affect the validity of the order of the county court, establishing a ferry on Daniel’s application.
As it seems from the proof, that all the g. ound between the two rivers, from their confluence, up to a distance beyond the place where Brown fixed his landing, was called Hlia point-,“ the location of Brow n’s ferry, by the county court, was not restricted to any pari icular spot on the point. Therefore, as Brown owned the whole of “the point,” he had a ri ght to make his landing any where on ground embraced in the line bounding the point on the Cumberland. Having designated the landing at which Daniel’s ferry was afterwards estab-tablished, the two ferries, were, consequently, at the same place. Daniel had been placed in the use of Brown’s ferry, by Brown himself, under a contract between them. He had, therefore, no right to supplant Brown by abandoning his agency for him, and using the ferry as his own, in opposition to Brown’s right. So far as Daniel is personally concerned, therefore, his ferry could confer no individual advantage on himself, although, for the reason already assigned, its establishment may he valid.
It does not appear that the order for a ferry in the name of Givens and company, could interfere with the ferry of Brown, because the order establishes their ferry at. the mouth of Cumberland, and it has not been shown that the mouth of Cumberland was understood to extend one hundred yards up that riv er, or in other words, to the landing of Brown. It does not appear that they *32 ever obtained an order for a ferry, after the conveyance ^ t° them. Consequently, the only right which they have shown in the feiry from Brown’s landing, is that which they derived from Daniel, through the writing which has been granted. They held, therefore, as Daniel held, lie held in tiust for Brown, and therefore, they must be considered as holding as his trustees in equity.
But Brown could not, on the proof in this case, re-cocer damages from either Daniel, or the present defendants in an action for “disturbanceHe confided his ferry to Daniel for an indefinite period, and consented that Daniel should, whilst he should keep it, enjoy all its profits. Tic has no! shown that he ever attempted to get the possession of his ferry, or that he was ever ■obstructed by Daniel or the defendants, in any use which he might be disposed to make of it. There is no evidence that he ever claimed, or had a right to claim from Daniel any compensation for Daniel’s use of the ferry. On the contrary, it is proved that he was to receive nothing from Daniel for the time during which he might permit him to keep it. It would result, therefore, that if fifty oilier ferries had been established, Brown could not complain that he had lost any profit which should have resulted to him from his ferry.
But the establishment of Daniel’s ferry, may, and probably will diminish the value of Brown’s, and, therefore, as the possession was obtained from Brown, and was to be held in his right, so far as Brown may be injured, he might recover damages by an appropriate remedy. As he had given the profit to Daniel, he must be considered an having consented, that be and those claiming under him, should enjoy them, until, by his conduct he evinced the contrary.
If he had shown that he had been obstructed in the Use of his ferry, or in the enjojment of its full profits, he might have recovered damages in this suit. But there is no evidence whatever fo this effect. Whenever he shall prove that he had been so obstructed, he maybe entitled to adequate reparation. Daniel, and all who may hold under him, will be considered as holding and using the ferry in trust for Brown, and v/ill be responsible to him for the profils, fromfhe time that fie shall have sufficiently manifested an intention to appropriate them to his own use.
Wickliffe, and Wooley, for appellant; Crittenden and Denny, for appellees.
But not having shown in this case, any injury for which he could recover in an action for “disturbance,” (although he seems to be entitled to all the profits of the ferry privilege across the Cumberland from the lot sold to Daniel,) he was not entitled to a verdict for damages. It does not appear that any damages had accrued to him before the date of his writ.
Wherefore, the judgment of the circuit court is affirmed.